**KLINE & SPECTER, P.C.**
By:     Thomas R. Kline, Esquire                          *Attorneys for Plaintiff*
        Elizabeth A. Crawford, Esquire
        Michelle A. Paznokas, Esquire
        Wyatt Larkin, Esquire
Attorney I.D. No. 28895/313702/324794/334482
1525 Locust Street, 19ᵗʰ Floor
Philadelphia, PA 19102
215-772-1000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LUKE ADAMS<br>316 College Park Drive<br>Monroeville, PA 19546<br><br>               *Plaintiff,*<br><br>  v.<br><br>PANERA BREAD COMPANY<br>4172 William Penn Highway<br>Monroeville, PA 15146<br>  And<br>PANERA, LLC<br>3630 S. Geyer Road, Suite 100<br>St. Louis, MO 63127<br><br>               *Defendants.* | **JURY TRIAL DEMANDED** |

**CIVIL ACTION – COMPLAINT**

Plaintiff Luke Adams, by and through his attorneys, Kline & Specter, P.C., files this Complaint and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Luke Adams (hereinafter "Plaintiff") is an adult person and resident of the state of Pennsylvania, residing at 316 College Park Drive, Monroeville, PA 19546.

1

2.      Defendant Panera Bread Company ("Panera Store") is a chain bakery café offering food and beverages at 4172 William Penn Highway, Monroeville, Pennsylvania 15146, where Plaintiff purchased the product at issue in this case, Panera Charged Lemonade.

3.      Defendant Panera, LLC is a Delaware limited liability company in good standing in the State of Missouri, with its principal place of business and corporate headquarters at 3630 South Geyer Road, Suite 100, St. Louis, Missouri 63127.

4.      At all relevant times hereto, Panera Store conducted systematic and continuous business activity within Philadelphia County in the Eastern District of Pennsylvania.

5.      This present action is within the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

## OPERATIVE FACTS

6.      The preceding paragraphs are incorporated by reference as if fully set forth herein.

7.      Luke Adams is an 18-year-old enrolled in his junior year at Gateway High School.



*Luke and his brothers (Noah and Elijah) and mother (Lisa)*

8.     In his free time, Luke works part-time at the donation door of St. Vincent DePaul Thrift Shop.



*Luke and his niece, Madeline*

9.     On March 9, 2024, Luke, who had never suffered from any health issues and consumed limited caffeine, went to the Panera Bread located at 4172 William Penn Highway, Monroeville, PA 15146 and ordered and picked up a large Mango Yuzu Citrus Charged Lemonade as well as a chicken sandwich that he had purchased through the Panera Bread App.



10.    A large Mango Yuzu Citrus Charged Lemonade has 390 mg of caffeine without ice and 237 mg of caffeine with ice.

11.    When Luke picked up his Charged Lemonade, which was filled for him by an employee, he was not aware that the Charged Lemonade was a super energy drink with high amounts of caffeine, sugar and guarana.

12.    After consuming the Charged Lemonade and sandwich, Luke returned home before heading to the Cinemark Monroeville Mall Movie Theater to see Dune 2 with friends at approximately 7:00 PM.

13.    While at the theater, at approximately 9:34 PM, a friend sitting next to Luke heard him making unusual sounds and took notice of him.

14.    It was at this time that it was discovered that Luke was in sudden cardiac arrest.

15.     The cardiac arrest was later found to be caused by ventricular fibrillation, a type of heart arrythmia that can be triggered by caffeine.

16.     Luke was unresponsive.

17.     911 was called and aid began to be rendered by friends and strangers.

18.     At 9:36 PM, two nurses and a cardiologist, who were in the theater, began performing CPR.

19.     At 9:40 PM, an automated external defibrillator (AED) was connected to Luke and two electric shocks were delivered in an effort to return his heart to normal rhythm.

20.     Though his heart rhythm remained irregular despite the shocks, the AED was able to restore pumping to his heart.

21.     CPR continued to be performed and EMS arrived at 9:41 PM.

22.     Luke was tachycardic with a heart rate of 170 and a blood pressure of 70/53.

23.     He was also noted as being tachypneic and continued to be unresponsive.

24.     He was transported via ambulance to Allegheny Health Network Forbes Hospital – he was hypotensive on transport and received push dose of epinephrine.

25.     While in the Emergency Department, Luke had seizure activity.

26.     Luke also was still tachycardic with a heart rate of 203 and a blood pressure of 129/80; his heart rhythm continued to be irregular, and his breathing was tachypneic.

27.     Luke was stabilized and admitted to the ICU where he was intubated and put on a ventilator due to acute respiratory failure.

28.     While in the ICU he experienced a second seizure.

29.     After regaining consciousness once sedation was retired on March 11th, Luke was further evaluated by both Neurology and Cardiology between March 11th and March 14th.

5

30.    Neurology reported his seizures as being of "unclear etiology, possibly related to cardiac arrest secondary to caffeine intake from Panera Charged Lemonade […]."

---

**Neurology Progress Note**

**SERVICE DATE:** 3/11/2024
**SERVICE TIME:** 9:40 AM
**Hospital Medicine/Primary Attending:**[NR.1T] Dr. Sandhu

Assessment/Plan

**#status epilepticus**
    -unclear etiology, possibly[NR.1M] related to cardiac arrest secondary to caffeine intake from Panera Charged Lemonade,[NR.2M] photic stimulation induced
    -MRI brain[NR.1M] showed no acute abnormalities[NR.2M]
    -continuous EEG in place, read on 3/11 showed no clear evidence of seizure activity, noted intermittent right hemispheric slowing.[NR.1M] Discontinued continuous EEG as MRI testing needs to be completed. Will hold off on repeating continuous EEG as patient has not had any further seizure activity.[NR.2M]
    -continue keppra 1[NR.1M]5[NR.2M]00mg BID[NR.1M]
    -given load of dilantin on 3/11, will attempt to hold on further dosing if able and monitor closely as propofol is weaned[NR.2M]
    -avoid VIMPAT given unclear underlying cardiac dysfunction and would avoid depakote given family hx of mitochondrial disease and PDH with risk of liver toxicity
    -CSF analysis pending LP attempted on 3/10 but CSF not accessed[NR.1M], would consider re-attempting once cardiac workup is completed however it appears the etiology may have been cardiac in nature[NR.2M]
    -paraneoplastic eval in progress
    -pyruvate level[NR.1M]

---

31.    Similarly, Cardiology, when describing the cause of Luke's cardiac arrest, noted, "heavy caffeine intake identified is only potential trigger."

---

Impression:
Out of hospital VF arrest status post bystander CPR and appropriate shock from AED
Heavy caffeine intake identified is only potential trigger
No personal family history of sudden cardiac death
Brugada pattern on initial EKG?
Still somewhat confused but now extubated

Recommendation:
Agree with cardiac MR
Agree with genetic testing
Supportive care
In the absence of a clearly reversible cause for his arrest then subcutaneous ICD prior to discharge

William Belden, MD

---

32.    A cardiac MRI showed no structural abnormalities in Luke's heart, genetic testing revealed no conditions, and ultimately, no underlying seizure condition was identified to have caused the cardiac event.

33.     On March 14, 2024, a subcutaneous implantable cardioverter defibrillator was connected to Luke's heart and indefinitely implanted for preemptive secondary prevention.

34.     As a result of drinking Panera Charged Lemonade, Luke's life has been impacted physically, emotionally, socially, and financially.

35.     Luke suffers from post-traumatic stress disorder and generalized anxiety as a result of the event and is on medication.

36.     He can no longer take part in the same lifestyle habits he held previously as he now has an implantable cardioverter defibrillator and an underlying heart condition triggered by the Panera Charged Lemonade.

### Defective Design

37.     Defendants design, formulate, manufacture, market, warrant, promote, distribute, and sell to consumers at their retail locations a product called Panera Charged Lemonade.

38.     Defendants sell the Panera Charged Lemonade at one of their retail stores located at 4172 William Penn Highway, Monroeville, PA 15146.

39.     Panera Charged Lemonade is a beverage designed by Defendants that contains the following ingredients: water, caffeinated mango yuzu citrus flavored syrup (water, apple juice concentrate, sugar, citric acid), caffeine, coffee extract (source of caffeine), guarana extract (source of caffeine), acerola powder, ascorbic acid, natural flavor (mango, yuzu, and citrus natural flavors with other natural flavors), beta-carotene (color), and agave lemonade base (water, sugar, lemon juice, lemon juice concentrate, agave, natural flavors).

40.     Many ingredients in the Panera Charged Lemonade are classified as "stimulants" by the Centers for Disease Control, which warns that ingredients for consumption classified as

7

"stimulants" may have dangerous health effects by increasing blood pressure, heart rate, breathing, as well as dangerous effects on the nervous system.[1]

41.     The caffeine content of the Panera Charged Lemonade ranges from 260 milligrams in 20 fluid ounces (regular size) to 390 milligrams in 30 fluid ounces (large size).

42.     At 30 fluid ounces, Panera Charged Lemonade exceeds the combined contents of 12 fluid ounces of Red Bull (114 milligrams caffeine) and16 fluid ounces of Monster Energy Drink (160 milligrams caffeine).

43.     The caffeine content of Panera Dark Roast coffee ranges from merely 161 milligrams in 12 fluid ounces (small coffee), 216 milligrams in 16 fluid ounces (medium coffee), and 268 milligrams in 20 fluid ounces (large coffee).

44.     The sugar content of Panera Charged Lemonade ranges from 82 grams to 124 grams of sugar, exceeding the combined contents of both a 12-fluid-ounce Red Bull (27 grams of sugar) and 16-fluid-ounce Monster Energy Drink (54 grams of sugar).

45.     The low end of the sugar content of Panera Charged Lemonade (82 grams of sugar) is equivalent to 20.5 teaspoons of sugar, and the high end (124 grams of sugar) is equivalent to 29.75 teaspoons of sugar.

46.     Panera Charged Lemonade is defective in design because it is a dangerous energy drink.

47.     Defendants knew or should have known that the Panera Charged Lemonade, as designed and formulated, once consumed, could injure consumers, including, *inter alia*, children, pregnant and breastfeeding women, people sensitive to caffeine, and people with underlying heart conditions, by causing catastrophic injuries and/or death.

---

[1]   *The Buzz on Energy Drinks*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyschools/nutrition/energy.htm (last visited Jul. 12, 2023).

48.     Due to the defective and unreasonably dangerous design of Panera Charged Lemonade, customers were and continue to be at an increased risk of injury while consuming the dangerous beverage.

49.     Due to the unreasonably dangerous and defective design of Panera Charged Lemonade, as described throughout this Complaint, Plaintiff suffered cardiac arrythmias and ultimately cardiac arrest, which resulted in the permanent implantation of a cardioverter defibrillator.

## Defective Manufacturing

50.     Panera Charged Lemonade is also defectively manufactured because it is mixed in-house by Panera employees.

51.     This manufacturing is inherently dangerous because Panera Charged Lemonade involves mixing unsafe ingredients at certain concentrations.

52.     Knowing this, before and during the marketing and sale of the Panera Charged Lemonade, Defendants knew or should have known that proper quality control for manufacturing and/or mixing the product was crucial to consumer safety, and that permitting their employees to mix the product could result in an increased risk of causing permanent and catastrophic injuries to consumers—especially children, pregnant and breastfeeding women, and caffeine-sensitive individuals (e.g., those with underlying heart problems).

53.     Due to the unreasonably dangerous and defective manufacturing of Panera Charged Lemonade, as described throughout this Complaint, Plaintiff suffered cardiac arrythmias and ultimately cardiac arrest, which resulted in the permanent implantation of a cardioverter defibrillator.

## Defective Warnings

9

54.     Defendants also failed to properly warn consumers of their dangerous product, Panera Charged Lemonade.

55.     Defendants did not market, advertise, and sell Panera Charged Lemonade in the store nor on the Panera Bread App as an "energy drink," which is a drink containing large amounts of caffeine, added sugar, other additives, and stimulants, such as guarana and/or taurine and/or L-carnitine ("stimulants").

56.     Instead, Defendants market, advertise, and sell Panera Charged Lemonade on their website and Panera Bread App as a "naturally flavored" and "plant based" beverage that "contains caffeine."

57.     The fact that Defendants do not specify the beverage's high caffeine content in a comprehensible unit of measurement and do not update the range of caffeine depending on cup-size choice, makes this representation ambiguous and unhelpful to consumers.

58.     Consumers are not provided a factual basis for understanding it is an energy drink containing exorbitant amounts of caffeine, caffeine sources, stimulants, and sugar.

59.     Panera Charged Lemonade is not in compliance with the labeling or marketing commitments adopted by the American Beverage Association, which is the trade association representing the broad spectrum of companies that manufacture and distribute non-alcoholic beverages, including energy drinks, in the United States.[2]

60.     Before and during the marketing and sale of the Panera Charged Lemonade, Defendants knew or should have known that the defective and unreasonably dangerous design of

---

[2]*ABA Guidance for the Responsible Labeling and Marketing of Energy Drinks*, AM. BEVERAGE ASS'N, https://www.energydrinkinformation.com/files/resources/2014-energy-drinks-guidance-approved-by-bod-43020c.pdf (last visited July 17, 2023).

Panera Charged Lemonade could cause catastrophic injuries, including, *inter alia*, heart arrythmias, cardiac arrest, and/or death.

61.     Knowing this, before and during the marketing and sale of the Panera Charged Lemonade, Defendants knew or should have known that (1) proper notice of the product's exorbitant caffeine content was required and (2) that the omission of such consumer notice increased the risk of causing permanent and catastrophic injuries, especially to children, pregnant and breastfeeding women, and caffeine-sensitive individuals (e.g., those with underlying heart problems).

62.     Additionally, Defendants knew or should have known that failing to advertise the Panera Charged Lemonade as an energy drink increased the risk of causing permanent and catastrophic injuries to consumers.

63.     Despite knowing that the design of the Panera Charged Lemonade caused and increased the risk of causing permanent and catastrophic injuries and death, Defendants continued to advertise, market, and sell Panera Charged Lemonade as a safe-for-consumption beverage.

64.     The defective design and manufacturing of the Panera Charged Lemonade caused, increased the risk of harm, and/or was a substantial contributing cause of causing permanent and catastrophic injuries to consumers, including Plaintiff.

65.     The failure to warn of the risk of severe injury or death to consumers, including Plaintiff, as described throughout this Complaint, caused, increased the risk of harm, and/or was a substantial contributing cause of causing permanent and catastrophic injuries to consumers, including Plaintiff.

66.     As set forth more fully below, Defendants engaged in negligent, reckless, intentional, reckless, and/or outrageous misconduct which caused, increased the risk of harm,

and/or was a substantial contributing cause of Plaintiff's damages which include, but are not limited to, the following:

     a.  permanent implantation of an ICD;
     b.  ventricular fibrillation;
     c.  cardiac arrest;
     d.  seizures;
     e.  post traumatic stress disorder;
     f.  acute respiratory failure with hypoxia;
     g.  pain and suffering;
     h.  loss of enjoyment of life and life's pleasures;
     i.  emotional distress;
     j.  disfigurement;
     k.  embarrassment;
     l.  medical expenses;
     m.  all damages as set forth in greater detail in Plaintiff's Complaint and as permitted by Pennsylvania law.

## COUNT I – STRICT PRODUCTS LIABILITY
### PLAINTIFF V. ALL DEFENDANTS

67.    Plaintiff incorporates by reference all the above paragraphs as though set forth fully herein.

68.    At all relevant times hereto, Defendants assumed a duty in strict liability to design and manufacture drinks for consumption without a defective condition, and to warn about the dangers inherent in the drink.

69.    At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of cardiac-related injuries inherent in the design and manufacturing of Panera Charged Lemonade.

70.    At the time Defendants designed, formulated, manufactured, marketed, sold, promoted, and distributed Panera Charged Lemonade, it was defective in its design, unreasonably dangerous, and unsafe for its intended purpose because it did not provide adequate protection and/or warning against the foreseeable risk of cardiac-related injuries and death.

71.     At the time Defendants designed, formulated, manufactured, marketed, sold, promoted, and distributed Panera Charged Lemonade, it was defective in its manufacturing, unreasonably dangerous, and unsafe for its intended purpose because it did not provide adequate protection and/or warning against the foreseeable risk of cardiac-related injuries and death.

72.     The Panera Charged Lemonade at issue was in the same or substantially similar condition as when it left the possession of Defendants.

73.     Plaintiff did not misuse or materially alter the Panera Charged Lemonade.

74.     The Panera Charged Lemonade at issue could not be consumed as safely as an ordinary consumer would have expected when consumed in a reasonably foreseeable way, because of, *inter alia*, a lack of quality control in its in-house preparation.

75.     Further, a reasonable person would conclude that the probability and seriousness of harm outweighs the burden or cost of making Panera Charged Lemonade safe and quality controlled.

76.     The Panera Charged Lemonade was defective in one or more of the following respects:

   a.  the Panera Charged Lemonade was designed such that it could cause cardiac-related injuries to persons, especially to children, pregnant and breastfeeding women, and caffeine-sensitive individuals;
   b.  the Panera Charged Lemonade is manufactured and formulated in-store by employees such that its caffeine content is not controlled and, in turn, has an innate and dangerous potential to vary;
   c.  the Panera Charged Lemonade marketing, labeling, and/or packaging misrepresented the beverage as a harmless fruit juice beverage when it is similar to an energy drink;
   d.  the Panera Charged Lemonade misrepresented the large beverage's caffeine content as 158-237 mg when a large Panera Charged Lemonade can have up to 390 milligrams of caffeine without ice;
   e.  the Panera Charged Lemonade marketing, labeling, and/or packaging misrepresented the beverage's potential to cause cardiac-related injuries, especially in children, pregnant and breastfeeding women, and caffeine-sensitive individuals;

    f. Defendants failed to adequately inform and warn consumers of the beverage's high caffeine content and related propensity to cause cardiac-related injuries, especially in children, pregnant and breastfeeding women, and caffeine-sensitive individuals;

    g. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product in a defective condition;

    h. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product that was unreasonably dangerous to consumers;

    i. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

    j. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which could be designed more safely;

    k. Defendants misleadingly marketed the Panera Charged Lemonade as "naturally flavored" and "plant-based";

    l. Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade was designed such that it can cause cardiac-related injuries in consumers;

    m. Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade is not a traditional caffeine-free lemonade but rather is akin to an energy drink;

    n. Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade is manufactured and formulated by in-store by employees such that its caffeine content and stimulants are not controlled and, in turn, has an innate potential to vary dangerously;

    o. Defendants failed to cease manufacturing or otherwise alter the composition of Panera Charged Lemonade to produce a safer alternative, despite the fact that Defendants were on notice in March 2024 that such drinks posed a serious risk of bodily harm to consumers;

    p. Defendants failed to conduct post-marketing surveillance to determine the safety of Panera Charged Lemonade;

    q. other negligence regarding Panera Charged Lemonade that may be identified during discovery

77. The Panera Charged Lemonade was defective in design, subjecting Defendants to strict liability, in one or more of the following respects:

    a. the Panera Charged Lemonade was designed, distributed, and sold such that its quality and caffeine content could not be controlled due to its in-house preparation;

    b. Defendants designed, distributed, and sold a product in a defective condition;

    c. Defendants designed, distributed, and sold a product that was unreasonably dangerous to consumers;

     d.  Defendants designed, distributed, and sold a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

     e.  Defendants designed, distributed, and sold a product which could be formulated more safely;

     f.  being otherwise defective as learned through discovery.

78.    The Panera Charged Lemonade was defective in manufacturing, subjecting Defendants to strict liability, in one or more of the following respects:

     a.  the Panera Charged Lemonade was manufactured such that its quality and caffeine content could not be controlled due to its in-house preparation;

     b.  Defendants manufactured and sold a product in a defective condition;

     c.  Defendants manufactured and sold a product that was unreasonably dangerous to consumers;

     d.  Defendants manufactured and sold a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

     e.  Defendants manufactured and sold a product which could be formulated more safely; and

     f.  being otherwise defective as learned through discovery.

79.    The Panera Charged Lemonade had defective warnings, subjecting Defendants to strict liability, in one or more of the following respects:

     a.  the Panera Charged Lemonade marketing, labeling, and/or packaging did not indicate it was an energy and/or highly caffeinated drink;

     b.  the Panera Charged Lemonade marketing, labeling, and/or packaging did not explain its potential to cause cardiac-related injuries;

     c.  Defendants failed to adequately inform and warn consumers of the beverage's high caffeine content and related propensity to cause cardiac-related injury;

     d.  Defendants marketed the Panera Charged Lemonade as "naturally flavored" and "plant-based";

     e.  Defendants failed to adequately and comprehensibly disclose the amount of caffeine in their Panera Charged Lemonade; and

     f.  being otherwise defective as learned through discovery.

80.    Defendants are strictly liable to Plaintiff for designing, manufacturing, and failing to warn of the dangers of a defective and unreasonably dangerous product.

81.    The defective and unreasonably dangerous condition of the Panera Charged Lemonade was the direct and proximate cause of Plaintiff's severe and permanent injuries and damages, as previously set forth herein.

82. Defendants' failure to warn of the substantial dangers and inherent risks of Panera Charged Lemonade's exorbitant caffeine content and stimulants, as well as the inherent risks associated with the reasonably foreseeable use of Panera Charged Lemonade, was the direct and proximate cause of Plaintiff's injuries and damages, and it increased the risk of harm, as previously set forth herein.

83. The inherent risks associated with Panera Charged Lemonade outweighed the benefits of its consumption, as a safer alternative design was economically and technologically feasible at the time the product left the control of Defendants.

84. At all times, Defendants knew there was a high degree of probability of harm to Plaintiff and acted with a reckless indifference to the potential and foreseeable consequences of Defendants' defective product.

85. At all times, Defendants knew of the serious harm that could result from their conduct.

86. Defendants were always aware or recklessly disregarded the likelihood that such serious harm would arise from their conduct.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants, jointly and severally, including claims for compensatory damages, punitive damages, interest, costs of suit, and such other relief as this Honorable Court may deem appropriate and just.

## COUNT II – NEGLIGENCE
### PLAINTIFF V. ALL DEFENDANTS

87. Plaintiff incorporates by reference all the above paragraphs as though set forth fully herein.

88.     At all relevant times hereto, it was Defendants' duty to use reasonable care in the design, manufacturing, formulation, marketing, sale, promotion, and/or distribution of Panera Charged Lemonade.

89.     This duty required Defendants to ensure that its product did not pose an unreasonable risk of bodily harm to Plaintiff and all other consumers, and similarly required Defendants to warn of side effects, risks, and dangers associated with the consumption of Panera Charged Lemonade.

90.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of cardiac-related injuries inherent in consuming Panera Charged Lemonade.

91.     Defendants breached the duty of care they assume and owe to consumers and were negligent, careless, and reckless in designing, formulating, manufacturing, marketing, selling, promoting, and distributing Panera Charged Lemonade in one or more of the following respects:

    a.  the Panera Charged Lemonade was designed such that it could cause cardiac-related injuries to persons, especially to children, pregnant and breastfeeding women, and caffeine-sensitive individuals;
    b.  the Panera Charged Lemonade is manufactured and formulated in-store by employees such that its caffeine content is not controlled and, in turn, has an innate and dangerous potential to vary;
    c.  the Panera Charged Lemonade marketing, labeling, and/or packaging misrepresented the beverage as a harmless fruit juice beverage when it is akin to an energy drink;
    d.  the Panera Charged Lemonade marketing and/or website and Panera App misrepresented the beverages caffeine content as containing between 158-237 mg of caffeine, when it can contain up to 390 mg;
    e.  the Panera Charged Lemonade marketing, labeling, and/or packaging misrepresented the beverage's potential to cause cardiac-related injuries, especially in children, pregnant and breastfeeding women, and caffeine-sensitive individuals;
    f.  Defendants failed to adequately inform and warn consumers of the beverage's true caffeine content and related propensity to cause cardiac-related injuries, especially in children, pregnant and breastfeeding women, and caffeine-sensitive individuals;
    g.  Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product in a defective condition;

h.  Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product that was unreasonably dangerous to consumers;

i.  Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

j.  Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which could be designed more safely;

k.  Defendants marketed the Panera Charged Lemonade as "plant-based";

l.  Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade was designed such that it can cause cardiac-related injuries in persons who consume it;

m.  Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade is not a traditional lemonade such that it is similar to an energy drink;

n.  Defendants failed to adequately inform and warn consumers that the Panera Charged Lemonade is assembled in-store by employees such that its caffeine content and stimulants are not controlled and, in turn, has an innate potential to vary dangerously;

o.  Defendants failed to cease manufacturing or otherwise alter the composition of Panera Charged Lemonade to produce a safer alternative, despite the fact that Defendants knew that such drinks posed a serious risk of bodily harm to consumers;

p.  Defendants failed to conduct post-marketing surveillance to determine the safety of Panera Charged Lemonade; and

q.  other negligence regarding Panera Charged Lemonade that may be identified during discovery

92.    Defendants' negligence, carelessness, and recklessness in designing, formulating, manufacturing, marketing, promoting, and selling Panera Charged Lemonade was the direct and proximate cause of Plaintiff's injuries and damages, as previously set forth herein.

93.    Defendants knew or should have known that consumers, including Plaintiff, would accept the material misrepresentations made regarding the nature and safety of Panera Charged Lemonade as true and accurate.

94.    Defendants designed, manufactured, and sold the Panera Charged Lemonade knowing that the product was defective because it contained stimulants causing cardiac arrhythmias and other cardiac-related injuries.

95.     By failing to give Plaintiff warning of the potential and reasonably foreseeable consequences of using the product and by its material misrepresentations, Defendants acted with wanton and willful disregard of Plaintiff's health and rights.

96.     At all times, Defendants knew there was a high degree of probability of harm to Plaintiff and acted with a reckless indifference to the potential and foreseeable consequences of Defendants' defective product.

97.     At all times, Defendants knew of the serious harm that could result from their conduct.

98.     Defendants were always aware or recklessly disregarded the likelihood that such serious harm would arise from their conduct.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants, jointly and severally, including claims for compensatory damages, punitive damages, interest, costs of suit, and such other relief as this Honorable Court may deem appropriate and just.

<u>**COUNT III – MISREPRESENTATION**</u>
**PLAINTIFF V. ALL DEFENDANTS**

99.     Plaintiff incorporates by reference all the above paragraphs as though set forth fully herein.

100.    At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of cardiac-related injuries inherent in the Panera Charged Lemonade.

101.    Defendants negligently and recklessly misrepresented material facts regarding the safety of the Panera Charged Lemonade in one or more of the following respects:

      a.  marketing the Panera Charged Lemonade as safe, "naturally flavored" and "plant based";

      b.  marketing and offering the Panera Charged Lemonade as a fruit juice beverage;

    c.  inaccurately marketing the Panera Charged Lemonade's caffeine content on the the Panera Bread Website and App as containing between 158-237 mg of caffeine, when it can contain up to 390 mg; and

    d.  other misrepresentations regarding Panera Charged Lemonade that may be identified during discovery.

102.    Defendants knew or should have known that consumers, including Plaintiff, would accept the material misrepresentations made regarding the nature and safety of Panera Charged Lemonade as true and accurate.

103.    Defendants knew or should have known that consumers, including Plaintiff, would rely on the material misrepresentations made regarding the safety of Panera Charged Lemonade when deciding whether to consume it.

104.    Defendants materially represented the nature of Panera Charged Lemonade with the intent to induce consumers, including Plaintiff, to purchase and consume it.

105.    Plaintiff justifiably relied on Defendants' material misrepresentations regarding the safety of the Panera Charged Lemonade when deciding to consume it on March 9, 2024.

106.    As a direct and proximate result of Defendants' material misrepresentations, Plaintiff suffered severe injuries and damages from consuming Panera Charged Lemonade in a reasonably foreseeable manner, as previously set forth herein.

107.    At all times, Defendants knew there was a high degree of probability of harm to Plaintiff and acted with a reckless indifference to the potential and foreseeable consequences of Defendants' defective product.

108.    At all times, Defendants knew of the serious harm that could result from their conduct.

109.    Defendants were always aware or recklessly disregarded the likelihood that such serious harm would arise from their conduct.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants, jointly and severally, including claims for compensatory damages, punitive damages, interest, costs of suit, and such other relief as this Honorable Court may deem appropriate and just.

## <u>COUNT IV – BREACH OF EXPRESS WARRANTY</u>
### **PLAINTIFF V. ALL DEFENDANTS**

110.    Plaintiff incorporates by reference all the above paragraphs as though set forth fully herein.

111.    All Defendants expressly warranted that Panera Charged Lemonade was safe and "plant based" to members of the consuming public, including Plaintiff.

112.    Panera Charged Lemonade does not conform to these express representations because it contains an exorbitant amount of caffeine content and stimulants causing cardiac arrhythmias and other cardiac-related injuries, especially in children, pregnant and breastfeeding women, and caffeine-sensitive individuals.

113.    Defendants breached their express warranties to the consuming public, including, but not limited to, Plaintiff.

114.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff suffered the injuries and damages set forth herein, entitling Plaintiff to damages.

115.    At all times, Defendants knew there was a high degree of probability of harm to Plaintiff and acted with a reckless indifference to the potential and foreseeable consequences of Defendants' defective product.

116.    At all times, Defendants knew of the serious harm that could result from their conduct.

117.    Defendants were always aware or recklessly disregarded the likelihood that such serious harm would arise from their conduct.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants, jointly and severally, including claims for compensatory damages, punitive damages, interest, costs of suit, and such other relief as this Honorable Court may deem appropriate and just.

Respectfully Submitted,

**KLINE & SPECTER, P.C**

By:     */s/ Elizabeth A. Crawford, Esquire*
Thomas R. Kline, Esquire
Elizabeth A. Crawford, Esquire
Michelle A. Paznokas, Esquire
Wyatt Larkin, Esquire
*Attorneys for Plaintiff*

22

## **VERIFICATION**

Luke Adams hereby verifies that he is the Plaintiff in the within action and that the facts set forth in the foregoing Complaint are true and correct to the best of his knowledge, information, and belief. He is aware that if any of the foregoing statements made are willfully false, he is subject to punishment.

_____
LUKE ADAMS

Dated: 17/05/24 _____

23

# Complaint_Adams_FINAL

Final Audit Report                                                              2024-05-17

| | |
|---|---|
| Created: | 2024-05-17 |
| By: | Elizabeth Crawford (elizabeth.crawford@klinespecter.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA3o-A3rR4tkanjrAC0IXiD_0IO8rxA36s |

## "Complaint_Adams_FINAL" History

Document created by Elizabeth Crawford (elizabeth.crawford@klinespecter.com)
2024-05-17 - 7:04:07 PM GMT

Document emailed to Lisa (lisa.feyes@mvfc4.org) for signature
2024-05-17 - 7:04:12 PM GMT

Email viewed by Lisa (lisa.feyes@mvfc4.org)
2024-05-17 - 7:08:54 PM GMT

Document e-signed by Lisa (lisa.feyes@mvfc4.org)
Signature Date: 2024-05-17 - 7:11:10 PM GMT - Time Source: server

Agreement completed.
2024-05-17 - 7:11:10 PM GMT

Adobe Acrobat Sign